# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT BERG, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>AKORN, INC., JOHN N. KAPOOR, KENNETH S. ABRAMOWITZ, ADRIENNE L. GRAVES, RONALD M. JOHNSON, STEVEN J. MEYER, TERRY A. RAPPUHN, BRIAN TAMBI, ALAN WEINSTEIN, RAJ RAI, FRESENIUS KABI AG, and QUERCUS ACQUISITION, INC.,<br><br>    Defendants. | Civil Action No. 3:17-cv-00350-BAJ-RLB<br><br>Consolidated with<br>3:17-cv-00359-BAJ-RLB<br>3:17-cv-00367-BAJ-EWD<br>3:17-cv-00373-BAJ-RLB<br>3:17-cv-00389-BAJ-RLB<br>3:17-cv-00395-BAJ-RLB<br><br><u>CLASS ACTION</u> |
| This Document Relates To:<br>ALL ACTIONS | |

## OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' EXPEDITED MOTIONS FOR CHANGE OF VENUE

Dated: July 3, 2017

| | |
|---|---|
| **O'BELL LAW FIRM, LLC** | **KAHN SWICK & FOTI, LLC** |
| By: */s/ Eric J. O'Bell*<br>Eric J. O'Bell (#26693)<br>3500 North Hullen Street<br>Metairie, LA 70002<br>(504) 456-8677<br>(504) 456-8653 facsimile<br>ejo@OBellLawFirm.com<br>*Attorneys for Plaintiffs Robert Berg and Jorge Alcarez* | By: */s/ Lewis S. Kahn*<br>Lewis Kahn, Esq. (23805)<br>206 Covington Street<br>Madisonville, La 70447<br>Telephone: (504) 455-1400<br>Facsimile: (504) 455-1498<br>lewis.kahn@ksfcounsel.com<br>*Attorneys for Plaintiffs Demetrios Pullos, Sean Harris, Shaun House and Robert Carlyle* |

I.   **INTRODUCTION**

Plaintiff Carlyle ("Plaintiff"), joined by Plaintiffs Berg, Alcarez, House, Harris, and Pullos ("Plaintiffs"), through undersigned counsel, respectfully submits this Omnibus Memorandum of Law in Opposition to the Expedited Motions for Change of Venue filed by Defendants (defined below) in six Related Actions.[1] Those motions seek to transfer the six Related Actions pending before this Court to the United States District Court for the Northern District of Illinois – where there is not a single case pending regarding this action. Defendants' motion is a transparent attempt to delay and frustrate Plaintiff's effort to address the material misstatements and omissions in the Proxy Statement (defined below) at issue in this case until after the July 19, 2017 shareholder vote that is the subject of that Proxy Statement. However, because any such misstatements and omissions must be addressed in advance of the July 19 vote, and, thus any hearing on Plaintiff's pending motion for preliminary injunction must be held in advance of that vote, transferring the Related Actions would essentially prevent Plaintiff from securing any meaningful pre-vote relief, which will result in significant prejudice to Plaintiff and Akorn's other public shareholders. Accordingly, and for the reasons outlined below, Plaintiffs respectfully request that this Court deny Defendants' Motions for Change of Venue.

---

[1] The Related Actions are: *Robert Berg v. Akorn, Inc., et al.*, Case No. 3:17-cv-00350-BAJ-RLB (June 2, 2017); *Jose Alcarez v. Akorn Inc., et al.*, Case No. 3:17-cv-00359-BAJ-RLB (June 7, 2017); *Shaun A. House v. Akorn, Inc., et al.*, Case No. 3:17-cv-00367-BAJ-EWD (June 12, 2017); *Sean Harris v. Akorn, Inc., et al.*, Case No. 3:17-cv-00373-BAJ-RLB (June 14, 2017); the instant action, *Robert Carlyle v. Akorn, Inc., et al.*, 3:17-cv-00389-BAJ-RLB (June 21, 2017); and *Demtrios Pullos v. Akorn, Inc., et al.*, 3:17-cv-00395-BAJ-RLB (June 22, 2017). Pursuant to the Joint Stipulation and [Proposed] Order Consolidating Related Actions filed in the Related Actions on June 29, 2017, Defendants designated the Expedited Motion for Change of Venue filed in the *Carlyle* Action (Dkt. No. 3) as the operative motion to which Plaintiffs should jointly respond. Accordingly, all docket citations herein are to the *Carlye* Action. All Plaintiffs join in and support both this Omnibus Opposition and the Motion Seeking a Preliminary Injunction and Expedited Discovery (Dkt. No. 6) filed by Plaintiff Carlyle in the *Carlyle* Action.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Akorn common stock. ¶11.[2] Defendant Akorn, Inc. ("Akorn" or the "Company") is a Louisiana corporation headquartered in Lake Forest, Illinois. ¶12. Together with its wholly owned subsidiaries, Akorn is a specialty generic pharmaceutical company that develops, manufactures, and markets generic and branded prescription pharmaceuticals and branded and private-label over-the-counter ("OTC") consumer health products and animal health pharmaceuticals. *Id.*

Defendants John N. Kapoor, Kenneth S. Abramowitz, Adrienne L. Graves, Ronald M. Johnson, Steven J. Meyer, Terry A. Rappuhn, Brian Tambi, and Alan Weinstein are the members of Akkron's Board of Directors (the "Individual Defendants" and, together with Akorn, "Defendants"). ¶¶ 13-20. Non-party Fresenius Kabi AG ("Fresenius Kabi") is a German stock corporation with its executive offices located in Germany and is a party to the Merger Agreement. ¶ 22. Non-party Quercus Acquisition, Inc. ("Merger Sub" and, together with Fresenius Kabi, "Fresenius") is a Louisiana corporation, a wholly-owned subsidiary of Fresenius Kabi, and a party to the Merger Agreement. ¶ 23.

### B. The Proposed Transaction

On April 24, 2017, Akorn and Fresenius publicly announced that they had entered into a definitive merger agreement (the "Merger Agreement"), pursuant to which Merger Sub would merge with and into Akorn, with Akorn surviving the merger as a wholly-owned subsidiary of Fresenius Kabi (the Proposed Transaction"). ¶3. In the Proposed Transaction, Akorn shareholders will receive $34.00 in cash per share for each share of Akorn common stock they

---

[2] All "¶_" and "¶¶_" citations are to the Complaint for Violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (Dkt. No. 1) filed in the *Carlyle* Action.

own (the "Merger Consideration"). *Id.* According to the Company's press release, the Proposed Transaction is valued at approximately $4.3 billion, plus the assumption of approximately $450 million of debt. *Id.* The Proposed Transaction is subject to approval by Akorn shareholders. *Id*

### C. The Proxy Statement

On May 22, 2017, as amended on June 15, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in which they solicit the votes of Akorn's public shareholders in favor of the Proposed Transaction. *See* Dkt. No. 3-7. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. *See* ¶¶43-60; Motion Seeking a Preliminary Injunction and Expedited Discovery (Dkt. No. 6). Accordingly, Plaintiff has moved to enjoin the July 19, 2017 stockholder vote until Defendants disclose the material information sought herein. Dkt. No. 6.

### D. Relevant Procedural History

In the wake of the dissemination of the materially incomplete and misleading Proxy Statement, six plaintiffs filed the Related Actions in this district to address those misstatements and omissions. Between June 15 and June 26, 2017, Defendants moved to transfer all of the Related Actions to the Northern District of Illinois, even though no suits regarding this matter are currently pending there.[3] On June 26, 2017, Plaintiff moved to preliminarily enjoin the July 19, 2017 shareholder vote on the Proposed Transaction unless and until Defendants correct the material misstatements and omissions in the Proxy Statement. (Dkt. No. 6).

---

[3] Plaintiff Carlyle initially filed suit in the United States District Court for the Northern District of Illinois. However, in light of the multiple pending Related Actions before this Court, in light of the fact that a time-sensitive motion for preliminary injunction was forthcoming and the need to secure that relief before the shareholder vote, to avoid the delays associated with the very transfer that Defendants now seek, and in the interest of judicial economy and the preservation of resources, Plaintiff Carlyle voluntarily dismissed his Illinois suit pursuant to F.R.C.P 41(a) and subsequently filed the *Carlye* Action in this District. At this time, there are no suits pending in the United States District Court for the Northern District of Illinois regarding this matter.

**III.   ARGUMENT**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The Fifth Circuit applies a two-part test to determine the propriety of a Section 1404 transfer.  First, a case can only be transferred to a district "where it might have been brought." 28 U.S.C. § 1404; *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).[4]  Second, the party seeking transfer "must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Volkswagen*, 545 F.3d at 315.  The Fifth Circuit has adopted the same private and public interest factors as applied to *forum non conveniens* analyses to determine whether a transfer of venue is "for the convenience of parties and witnesses and in the interest of justice" under Section 1404. *Volkswagen*, 545 F.3d at 315.[5]  While these "factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive[,]" and "'none . . . can be said to be of dispositive weight.'" *Id.*

Finally, "[a]lthough a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places **a significant burden on the movant to show good cause for the transfer**." [emphasis added] *Volkswagen*, 545 F.3d at 314

---

[4]   The parties agree that this action could also have been brought in the Northern District of Illinois. Dkt. No. 3-1 at 6-7.

[5]   The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *Volkswagen*, 545 F.3d at 315.  The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *Id.*

n.10.[6] For this reason, the Fifth Circuit requires that the party seeking that transfer bear the "significant" burden of (1) "satisfy[ing] the statutory requirements and [(2)] clearly demonstrat[ing] that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* at 315. "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*

In this case, and as outlined below, the Northern District of Illinois is not clearly more convenient that this District. Indeed, Plaintiff already has moved in this Court for a preliminary injunction and the shareholder vote on the Proposed Transaction is scheduled for July 19, 2017. Thus, any delay would be extremely prejudicial to Plaintiff and Akorn's other public stockholders. In sum, Plaintiff's choice of venue should be respected and this Court should deny Defendants' motion.

### A. The Private Interest Factors

1. The relative ease of access to sources of proof, the availability of compulsory process to secure the attendance of witnesses, and the cost of attendance for willing witnesses

The relative ease of access to sources of proof, the availability of compulsory process to secure the attendance of witnesses, and the cost of attendance for willing witnesses favors neither venue because Plaintiff's action is based on the legal sufficiency of the disclosures made in the Proxy Statement. Where that Statement was authored is irrelevant to whether it discloses all material information under governing federal law. Nor is the location of the authors of the Proxy Statement relevant to its legal sufficiency under federal law. Indeed, this is perhaps best illustrated by the fact that Plaintiff has been able to identify material misstatements and

---

[6] *See also Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, No. CV 06-1190-JFW (SSx), 2006 U.S. Dist. LEXIS 37641, at *8 (C.D. Cal. June 6, 2006) ("Generally, courts afford the plaintiffs' choice of forum substantial weight in a Section 1404(a) analysis."); *Franklin v. Blaylock*, 218 F. Supp. 261, 262 (S.D.N.Y. 1963) (Where plaintiffs, having choice of venue, chose the venue where they reside, their choice is entitled to great weight.); *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955) (plaintiff's choice of venue is still to be considered).

omissions in the Proxy Statement and move for a preliminary injunction to correct those material misstatements and omissions without first obtaining discovery from Defendants. Accordingly, Defendants' arguments regarding the location of witnesses and evidence are mere makeweight.

What is more, even if the location of witnesses and evidence were relevant to the relief requested in this case, the fact of the matter is that any evidence would be produced electronically and any non-party, out-of-state witnesses will not likely be inconvenienced because any depositions would, in all likelihood, be conducted where they are located. *See* Fed. R. Civ. P. 45(c)(a)(A) (providing for the issuance of subpoenas to compel witnesses to sit for depositions wherever they reside, are employed, or transact business). Defendants have not alleged – nor can they – that they would be unable to secure the attendance of any third party witness or that any third party witness is unwilling to testify. *See Healthpoint, Ltd. v. Derma Scis, Inc.*, 939 F. Supp. 2d 680, 689 (W.D. Tex. 2013) (in the absence of a claim that compulsory process would be necessary to secure the presence of a witness, this factor is neutral); *Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.*, No. 3:08-CV-0816-G, 2009 U.S. Dist. LEXIS 15606, at *9 (N.D. Tex. Feb. 24, 2009) (compulsory process factor was neutral where the parties have not alleged that non-party witnesses are unwilling to testify).[7]

Furthermore, **if** this case were to go to trial and **if** any relevant, non-party witness located outside of Louisiana were needed as a witness therein – two very big "ifs"– then the parties could either arrange for their live testimony in a manner convenient to them or conduct perpetuation depositions. *Healthpoint*, 939 F. Supp. 2d at 692 ("[T]o the extent that these

---

[7] *See also j2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. 6:08-CV-211, 2008 U.S. Dist. LEXIS 103609, at *10 (E.D. Tex. Dec. 23, 2008) (failure to identify need for compulsory process weighed against transfer); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, Civil Action No. 3:09-CV-0488-D, 2009 U.S. Dist. LEXIS 76571, at *16 (N.D. Tex. Aug. 26, 2009) (where defendant had not identified any witnesses for whom compulsory process would be needed, factor was at best neutral); *AllChem Performance Prods. v. Oreq Corp.*, Civil Action No. 3:11-CV-3577-D, 2013 U.S. Dist. LEXIS 6887, at *11 (N.D. Tex. Jan. 17, 2013) ("Because there is no evidence that either side requires compulsory process to obtain testimony in either venue, this factor is neutral.").

6

witnesses may provide relevant evidence, [Defendant] has not suggested that such evidence could not be obtained through videotaped depositions."); *Symbol Techs. v. Metrologic Instruments, Inc.,* 450 F. Supp. 2d 676, 679 (E.D. Tex. 2006) (factor did not favor transfer where movant did not explain why third-party witnesses' testimony would be necessary and where neither party was prevented from using videotaped depositions of unavailable witnesses at trial).

Finally, Akorn chose to incorporate itself in Louisiana, voluntarily availed itself of the protections of Louisiana law, and, in so doing, it voluntarily subjected itself to Louisiana law. Accordingly, Akorn itself would suffer no prejudice by being forced to litigate this dispute in the State where it expected to be subject to jurisdiction for any corporate wrongdoing. That Akorn purportedly no longer wishes to litigate in Louisiana is unavailing. Having come to Louisiana, incorporated itself under Louisiana's laws, received the protection of those laws, and conducted business as a Louisiana corporation, Akorn cannot now seek to force Plaintiff to litigate with Akorn in Akorn's venue of choice. Accordingly, this factor is at best neutral and thus weighs in favor of maintaining jurisdiction in this District.

2. All other practical problems that make trial of a case easy, expeditious and inexpensive

The only other private interest argument that Defendants raise in that the claims in this Action "will substantially overlap with those in the litigation challenging the Proposed Merger in Illinois state court" such that it would be "even more inconvenient and costly for the same Defendants and the same witnesses to have to litigate closely-related claims in a federal forum far away from Illinois." Dkt. No 3-1 at 9-10. But the claims raised in the Illinois state court actions regarding the Proposed Transaction are state-law breach of fiduciary duty claims and thus have absolutely no legal overlap with the federal securities law claims at issue in this Action. *See* Dkt. No 3-1 at 4-5 (acknowledging that state cases raise only state law claims while

7

the Related Actions raise federal law claims). Rather, the Illinois state court actions' only focus is whether certain defendants breached their fiduciary duties to Akorn's shareholders, while the Related Actions' focus is solely whether the Proxy Statement contains material misstatements or omissions. *Id.* There is no overlap, and this argument has no merit.

What Defendants fail to address, however, is the very real practical problem created by – and, no doubt, the impetus behind – their motion to transfer: delay. The shareholder vote on the Proposed Transaction is scheduled for July 19, 2017. Any supplement to the Proxy Statement correcting the material misstatements and omissions must be disseminated prior to the shareholder vote. That means that any hearing on Plaintiffs' Motion Seeking a Preliminary Injunction must be held before July 19, 2017 – leaving little time to fully brief that motion. Should this court transfer this case to the Northern District of Illinois, it would be all but impossible to secure a hearing date and fully brief Plaintiffs' Motion Seeking a Preliminary Injunction in time. **In other words, to transfer this case, as Defendants' request, would essentially deny Plaintiff the primary relief that he seeks – correction and supplementation of the Proxy Statement before the shareholder vote.** Courts throughout this country have repeatedly recognized that any such correction or supplementation should occur before the vote, and to deny Plaintiff and shareholders this information in a timely manner would prejudice them.[8] Accordingly, this factor weighs decisively in favor of maintaining venue in this District.

---

[8] *See, e.g., Shaev v. Adkerson*, C.A. No. 10436-VCN, 2015 Del. Ch. LEXIS 256, at *38 (Del. Ch. Oct. 5, 2015) ("[A] breach of the disclosure duty leads to *irreparable harm* . . . [O]nce this irreparable harm has occurred – *i.e.*, when shareholders *have* voted without complete and accurate information – it is, by definition, too late to remedy the harm."); *Oasis Research, LLC v. EMC Corp.*, No. 4:12-CV-526, 2012 U.S. Dist. LEXIS 118000, at *16-17 (E.D. Tex. Aug. 21, 2012) ("[T]his Court has already set an upcoming trial date for March of 2013 for this case, and its related cases. To transfer this litigation at this stage of the proceedings might cause improper delay and unfair prejudice to Plaintiff.") (motion to transfer venue denied); *Chesapeake Operating, Inc. v. Stratco Operating Co.*, No. A-06-CA-991-LY, 2007 U.S. Dist. LEXIS 17643, at *19 (W.D. Tex. Mar. 14, 2007) ("[T]he possibility of delay or prejudice if the transfer is granted is an important factor for the court to consider in determining whether to grant a motion to transfer venue under §1404(a).").

### B. The Public Interest Factors

#### 1. The administrative difficulties flowing from court congestion

"'Generally, this factor favors a district that can bring a case to trial faster.'" *Healthpoint*, 939 F. Supp. 2d at 693 (quoting *Frito-Lay*, 867 F. Supp. 2d at 871). Defendants do not even attempt to address this factor, instead assuming (without citation of any kind) that "there is no reason to believe that trying the Action would present administrative difficulties for the Northern District of Illinois" and citing, in support of that statement, a case in which the court "had 'no independent knowledge of the docket congestion' among two possible venues." Dkt. No. 3-1 at 10. While Defendants may not have bothered to provide this Court with "independent knowledge of the docket congestion" of this Court and the Northern District of Illinois, that information does indeed exist. According to the December 2016 Federal Court Management Statistics report (the most recent data available), the median time from filing to a trial in a civil action in this District is just 35.3 months, while the median time from filing to trial in a civil action in the Northern District of Illinois is 40.4 months.[9] In short, the Northern District of Illinois has a more congested docket than that of this Court, and – especially in a case where time is of the essence, as it is here – this factor accordingly weighs in favor of maintaining the Related Actions in this District. *See Bevil v. Smit Ams.*, 883 F. Supp. 168, 172 (S.D. Tex. 1995) (noting "trial track in this Court is much shorter…" than in Houston Division) ("Thus, in the instant case, the net effect of a transfer to the Houston Division would be to delay resolution. In the Court's view it cannot seriously be contended that the interest of justice requires a transfer of venue under such circumstances.") (motion to transfer venue denied); *Hupp v. Siroflex of Am., Inc.*, 848 F. Supp. 744, 750 (S.D. Tex. 1994) ("When considering a §1404(a) motion to transfer, a prompt

---

[9] United States District Courts – National Judicial Caseload Profile, available at http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2016.pdf.

9

trial is relevant to the convenience of the parties and witnesses and the interest of justice.") (motion to transfer venue denied); *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 827-28 (S.D. Tex. 1993) ("When considering a §1404(a) motion to transfer, '[a] prompt trial . . . is not without relevance to the convenience of the parties and witnesses and the interest of justice.'") (quoting *Fannin v. Jones*, 229 F.2d 368, 369-70 (6th Cir. 1956), *cert. denied*, 351 U.S. 938 (1956)) (motion to transfer venue denied).

        2.    <u>The local interest in having localized interests decided at home</u>

As noted above, this Action challenges the legal sufficiency of the disclosures made in the Proxy Statement. Where that Statement was authored and where its authors reside are irrelevant to whether it discloses all relevant information under federal law. Accordingly, there is no local interest in having this dispute decided anywhere.

        3.    <u>The familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law</u>

As Defendants' acknowledge, "because the Action involved exclusively federal law claims, the third and fourth factors – familiarity with the forum with the relevant law and conflicts of laws concerns – are neutral." Dkt. No 3-1 at 11.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motions to Change Venue.

Dated: July 3, 2017

| | |
|---|---|
| **O'BELL LAW FIRM, LLC** | **KAHN SWICK & FOTI, LLC** |
| By: */s/ Eric J. O'Bell* | By: */s/ Lewis S. Kahn* |
| Eric J. O'Bell (#26693) | Lewis Kahn, Esq. (23805) |
| 3500 North Hullen Street | 206 Covington Street |
| Metairie, LA 70002 | Madisonville, La 70447 |
| (504) 456-8677 | Telephone: (504) 455-1400 |
| (504) 456-8653 facsimile | Facsimile: (504) 455-1498 |
| ejo@OBellLawFirm.com | lewis.kahn@ksfcounsel.com |
| *Attorneys for Plaintiffs Robert Berg and Jorge Alcarez* | *Attorneys for Plaintiffs Demetrios Pullos, Sean Harris, Shaun House and Robert Carlyle* |

**OF COUNSEL:**
**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310
*Attorneys for Plaintiff Robert Berg*

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 3112
Berwyn, PA 19312
(484) 324-6800
*Attorneys for Plaintiff Robert Berg*

**OF COUNSEL:**
**FARUQI & FARUQI, LLP**
James M. Wilson, Jr. (*pro hac* forthcoming)
Nadeem Faruqi
685 Third Avenue, 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: nfaruqi@faruqilaw.com
jwilson@faruqilaw.com
*Attorneys for Plaintiff Sean Harris*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com, etripodi@zlk.com
*Attorneys for Plaintiff Jorge Alcarez*

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
jmonteverde@monteverdelaw.com
*Attorneys for Plaintiff Shaun House*

> **BROWER PIVEN**
> A Professional Corporation
> Daniel Kuznicki
> 475 Park Avenue South, 33rd Floor
> New York, New York 10016
> Telephone: 212-501-9000
> kuznicki@browerpiven.com
> *Attorneys for Plaintiff Robert Carlyle*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of July, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

> */s/ Eric J. O'Bell*
> Eric J. O'Bell