UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT BERG, individually and on behalf of all other similarly situated, | |
| Plaintiff, | No. 17 C 5016 |
| v. | Judge Thomas M. Durkin |
| AKORN, INC.; JOHN N. KAPOOR; KENNETH S. ABRAMOWITZ; ADRIENNE L. GRAVES; RONALD M. JOHNSON; STEVEN J. MEYER; TERRY A. RAPPUHN; BRIAN TAMBI; ALAN WEINSTEIN; RAJ RAI; FRENSENIUS KABI AG; QUERCUS ACQUISITION, INC., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Robert Berg filed this action, and several other individuals filed similar actions, against Akorn, Inc., the members of Akorn's board of directors, and Frensenius Kabi AG, in order to force Akorn to make certain revisions to the proxy statement it filed with the U.S. Securities and Exchange Commission in connection with Frensenius's bid to acquire Akorn. On July 10, 2017, Akorn made the changes to its proxy statement sought by Berg in this case and the plaintiffs in the other actions, making their claims moot. *See* R. 54-1 at 4. Shortly thereafter, all the cases were dismissed without prejudice by joint stipulations pursuant to Federal Rule of Civil Procedure 41(a)(1). *See id.* at 5. Plaintiffs' counsel also informed Defendants that they intended to seek their fees from Defendants. *See id.*

In this case in particular, Berg's counsel filed a "Motion for Entry of Stipulation and Voluntary Dismissal Without Prejudice." R. 54. The motion document provided that the Court would "retain[] jurisdiction over all parties solely for the purposes of any potential further proceedings relating to the adjudication of any claim by any Plaintiff in the Akorn Section 14 Actions (as defined in the accompanying stipulation and proposed order) for attorneys' fees and/or expenses." *Id.* As noted, the motion document attached a "Stipulation and Proposed Order" that included a more extensive recitation of the history of the cases. *See* R. 54-1. The Court granted the motion to dismiss by minute order on July 19, 2017, *see* R. 55, but did not enter the "Stipulation and Proposed Order." Two months later, on September 15, 2017, the parties filed another "Stipulation and Proposed Order Closing Case for All Purposes." R. 56. This document provided that "Plaintiffs in the Akorn Section 14 Actions have reached agreement with Defendants with respect to the Fee Claims and Defendants have agreed to provide Plaintiffs with a single payment of $322,500 in attorneys' fees and expenses to resolve any and all Fee Claims, and thus there are no Fee Claims to be adjudicated by the Court." *Id.* at 6. The document provided further, that "[t]his matter is fully resolved and no further issues remain in dispute, and, there being no reason for the Court to retain jurisdiction over this matter, the case should be closed for all purposes." *Id.*

Three days later, before the Court could take any action with respect to the September 15 proposed order, Theodore Frank, an owner of 1,000 Akorn shares, filed a motion to intervene for purposes of objecting to the settlement of the

attorneys' fee claims. R. 57; R. 66. Frank contends that the cases filed by Berg and the other plaintiffs are part of a "racket," pursued "for the sole purpose of obtaining fees for the plaintiffs' counsel," R. 66-2 at 1, which are successful "because victim defendants [like Akorn] find it cheaper, and therefore rational, to pay nuisance value attorneys' fees rather than contest them," R. 79 at 1, and further delay the merger. Frank contends that this is a "misuse of the class action device for private gain." R. 66-2 at 6. Berg opposes Frank's motion to intervene. That motion is now fully briefed and before the Court.

1. **Jurisdiction**

Berg's primary argument against Frank's motion is that "[t]he Rule 41(a)(1) dismissal divested this Court of subject matter jurisdiction and, contrary to Frank's contention, there is no ancillary jurisdiction based on the subsequent agreement by Akorn to pay fees and expenses." R. 78 at 3. It is generally true that a Rule 41 dismissal ends the case and strips the court of jurisdiction in a manner of speaking. But even Berg admits that there are a number of exceptions to this general rule, including motions for relief from judgment under Rule 60, *see Nelson v. Napolitano*, 657 F.3d 586, 588-89 (7th Cir. 2011); motions for sanctions under Rule 11, *id.*; and retention of jurisdiction in a case where the settlement precipitating the stipulated dismissal "falls apart," *see Voso v. Ewton*, 2017 WL 365610, at *3 (N.D. Ill. Jan. 25, 2017). Another exception is intervention by a shareholder in a derivative lawsuit in order to appeal a judgment. *See Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012). Notably, members of an uncertified putative class can appeal after the

3

named plaintiffs have settled without intervening in the underlying case. *See Devlin v. Scardelletti*, 536 U.S. 1 (2002). Thus, the mere fact that the case was dismissed pursuant to Rule 41 does not prohibit Frank from seeking to intervene.

## 2. Intervention

Like this case, the *Walgreen Company Stockholder Litigation* case involved settlement of claims seeking to compel disclosure of information in the context of a merger. 832 F.3d 718 (7th Cir. 2016). Unlike this case, the parties in *Walgreen* settled the class claims and sought court approval of the settlement, including attorneys' fees, which the district court granted. The Seventh Circuit reversed. In doing so, the court adopted a standard devised by the Delaware Chancery Court requiring that the sought after disclosures be "plainly material." *Id.* at 725 (quoting *In re Trulia, Inc. Stockholder Litig.*, 129 A.3d 884, 894 (Del. Ch. 2016)). The Seventh Circuit observed that there was no "indication that the members of the class [had] an interest in challenging" the merger at issue, and that the "only concrete interest suggested by this litigation is an interest in attorneys' fees." *Walgreens*, 832 F.3d at 726. The court opined that these types of cases that do not materially benefit the class but are designed only to generate attorneys' fees are "a racket" that "must end." *Id.* at 725.

In *Trulia*, the Delaware court also was concerned with the procedural posture of class settlement approvals, because once parties have settled, neither party has an incentive to advocate against its approval. Outside the normal adversarial process, it can be difficult for a court to determine whether the proxy disclosures at

4

issue are material. As an alternative to the process for class settlement approval, the court suggested that:

> plaintiffs' counsel apply to the Court for an award of attorney's fees after defendants voluntarily decide to supplement their proxy materials by making one or more of the disclosures sought by plaintiffs, thereby mooting some or all of their claims. In that scenario, where securing a release is not at issue, defendants are incentivized to oppose fee requests they view as excessive. Hence, the adversarial process would remain in place and assist the Court in its evaluation of the nature of the benefit conferred . . . for the purposes of determining the reasonableness of the requested fee.
>
> [This] preferred scenario of a mootness dismissal appears to be catching on. In the wake of the Court's increasing scrutiny of disclosure settlements, the Court has observed an increase in the filing of stipulations in which, after disclosure claims have been mooted by defendants electing to supplement their proxy materials, plaintiffs dismiss their actions without prejudice to the other members of the putative class (which has not yet been certified) and the Court reserves jurisdiction solely to hear a mootness fee application. From the Court's perspective, this arrangement provides a logical and sensible framework for concluding the litigation. After being afforded some discovery to probe the merits of a fiduciary challenge to the substance of the board's decision to approve the transaction in question, plaintiffs can exit the litigation without needing to expend additional resources (or causing the Court and other parties to expend further resources) on dismissal motion practice after the transaction has closed. Although defendants will not have obtained a formal release, the filing of a stipulation of dismissal likely represents the end of fiduciary challenges over the transaction as a practical matter.
>
> In the mootness fee scenario, the parties also have the option to resolve the fee application privately without obtaining Court approval. Twenty years ago, Chancellor Allen acknowledged the right of a corporation's directors

> to exercise business judgment to expend corporate funds (typically funds of the acquirer, who assumes the expense of defending the litigation after the transaction closes) to resolve an application for attorneys' fees when the litigation has become moot, with the caveat that notice must be provided to the stockholders to protect against "the risk of buy off" of plaintiffs' counsel. As the Court recently stated, "notice is appropriate because it provides the information necessary for an interested person to object to the use of corporate funds, such as by 'challeng[ing] the fee payment as waste in a separate litigation,' if the circumstances warrant." In other words, notice to stockholders is designed to guard against potential abuses in the private resolution of fee demands for mooted representative actions. With that protection in place, the Court has accommodated the use of the private resolution procedure on several recent occasions and reiterates here the propriety of proceeding in that fashion.

*Trulia*, 129 A.3d at 897-98.

Thus, the court in *Trulia* favorably contemplated the very scenario that has arisen in this case. And Plaintiffs' counsel have taken the advice of the court in *Trulia* and dismissed this case without prejudice, such that the class claims are no longer at issue. The court in *Trulia* also contemplated that an objecting shareholder like Frank would bring a "separate litigation" to challenge the reasonableness of any settlement payment. Instead, Frank seeks to intervene in a case that has settled.

### 3. "Interest" Under Rule 24

Federal Rule of Civil Procedure 24, governing intervention, requires that a potential intervenor demonstrate his "interest" in the case. Frank, however, has not, and—it appears to the Court—cannot, identify such an interest. To the extent Frank addresses this issue, Frank makes two seemingly incompatible arguments.

6

He first argues that he "intervenes not as a shareholder on behalf of the corporation, but as a class member to this strike suit." R. 79 at 9. But two sentences later, he asserts, "there is no speculation about Frank's injury. By design, the Plaintiff succeeded in extracting fees from Akorn, which Frank is a shareholder of, depleting the capital reserves of [an] entity Frank partially owns." *Id.* And in his opening brief, Frank argues that he "has a protectable interest as an Akorn shareholder, and has an ongoing interest in curtailing the scourge of merger strike suits." R. 66-2 at 13.

On the one hand, to the extent Frank contends he has an "interest in curtailing the scourge of merger strike suits," and the attorneys' fees settlement in this case is a product of such a suit, Frank's injury from Akron's payment of the settlement, can only be derivative of Akorn's. The Court does not see how that derivative injury can serve as an interest supporting Frank's intervention in this case. First, relief for a derivative injury generally requires compliance with procedures for filing derivative lawsuits under Federal Rule of Civil Procedure 23.1, state law, or both. Berg's case was not filed as a derivative suit, and Frank does not claim to have complied with any of these procedures. Second, even if Frank had complied with these procedures, or they are otherwise not applicable (or futile), his claim would almost certainly be barred by the business judgment rule. He admits as much when he concedes that Akorn's decision to settle with Berg was "rational." R. 79 at 8. Lastly, Rule 24 requires that an intervenor have an "interest" in "the subject of the action," or that they share "a claim or defense." The subject of the

7

action here was the information in the proxy statement, not the settlement Frank argues is harmful to Akorn and by extension his ownership stake of Akorn.

On the other hand, to the extent Frank contends he has an interest in this case because he is "a class member," that appears to be insufficient because the class claims have been dismissed without prejudice. The class members' claims are no longer at issue in this case, meaning that the class members' rights with respect to the claims Berg brought can no longer be vindicated or prejudiced. Frank has not demonstrated that the class has any continuing interest in this case in which Frank can intervene.

From a different perspective, Frank has not explained what procedural device would be available to him should he be permitted to intervene. The Court has entered no judgment from which Frank might seek relief under Rule 60. Frank was not a party to the litigation, so he does not have standing to seek sanctions under Rule 11. While he is a member of the putative class, no motion for class certification was filed, let alone denied, from which Frank might take an appeal. And as discussed, any standing Frank has to challenge the attorneys' fees settlement is derivative of an injury to Akorn. But Akron willingly agreed to the settlement, and Frank concedes that it was a rational decision.

Frank clearly seeks to challenge or object to the attorneys' fees settlement. But he has not identified a procedural mechanism that would serve as a vehicle for such an objection. There does not appear to be a process for the Court to approve or

8

reject the settlement akin to that under Rule 23 for class actions or Rule 23.1 for derivative suits.

Maybe Frank theorizes that the Court's retention of jurisdiction, and Plaintiffs' pending request for entry of an order closing the case "for all purposes," means that this case remains within the realm of a class action settlement that must comply with Rule 23. If this is Frank's theory, he has not articulated it. To the extent the Court's decision to retain jurisdiction in this case may have facilitated Berg's counsel's ability to extract greater fees from Defendants, the Court is sympathetic to Frank's frustration with Plaintiffs' engineering of a device to evade review under Rule 23 and the spirit of *Walgreen*. But the fact that Plaintiffs' have dismissed their class claims without prejudice, and that Defendants have already reached an agreement with Plaintiffs' counsel, makes it difficult (if not impossible) to see how this case remains within the ambit of Rule 23, or any other authority of the Court.

### 4. Inherent Authority

Separate from his motion to intervene, Frank asks the Court to order disgorgement of the attorneys' fees under its inherent authority to address abuse of the judicial process. Frank contends that such an action by the Court would be appropriate because Plaintiffs' claims are "shams," *see* R. 66-2 at 5, filed "for the sole purpose of obtaining fees for the plaintiffs' counsel," *id.* (quoting *Walgreen*, 832 F.3d at 724), which are a "misuse of the class action process." R. 66-2 at 13. But *Walgreen* applied a standard for approval of class settlements under Rule 23, which

is not at issue here. Notably, the Seventh Circuit did not find that the claims in *Walgreen* were frivolous, and did not order their dismissal. Thus, even if Berg's claims are "worthless," they are not necessarily meritless. *Walgreen* was primarily concerned with abuse of the special status of class counsel. That concern is not present here, and the Court does not perceive a basis to take the extraordinary remedy of disgorgement.[1] Neither has Frank identified one.

**Conclusion**

For these reasons, Frank's motions to intervene, R. 57; R. 66, and to consolidate, R. 67, are denied without prejudice. Because the parties' briefs on Frank's motion to intervene were focused on the Court's subject matter jurisdiction and contributed little to the Court's understanding of Frank's potential interest in this case; and because the Court is concerned with Berg's apparent success in evading the requirements of Rule 23, and takes seriously Frank's contention that this case, although brought in the name of Akorn's shareholders, actually serves to injure their interests (if only derivatively); Frank is granted leave to refile his motion to intervene (and motion to consolidate) by December 8, 2017. Should Frank refile his motion, it should focus on the issues identified by the Court in this opinion regarding his interest in this case generally. Should Frank refile his motion, Berg's opposition is due December 22, 2017, and Frank's reply is due January 8, 2018. If Frank does not file a motion by December 8, 2017, the Court will consider the case closed.

---

[1] Moreover, as discussed, the strategy employed by Plaintiffs' council here was actually encouraged by the court in *Trulia*, whose reasoning *Walgreen* adopted.

10

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: November 21, 2017